Good morning, Your Honors. My name is Noel Shavlik, and I represent the plaintiff appellant, John Shafer. With the Court's permission, I'd like to reserve three minutes of rebuttal time. Okay. Your Honors, this appeal concerns a written employment contract containing an ambiguous bonus clause. The District Court did find it was ambiguous, is that right? Yes, found it ambiguous in two respects. First, it was ambiguous as to whether a bonus had to be declared, and secondly, ambiguous as to whether... How much? Yes, as to the amount. Yes. The district judge was faced with the competing factual positions in the record of the parties. The defendants, one and only contract, said that John Shafer was entitled to a two percent bonus. John Shafer said, I was never told that my bonus arrangement, as originally negotiated with UGT, had been modified. And my original arrangement was my bonus would be three to five percent of pre-tax profit of the agencies I managed. And it wasn't in the contract. No, it wasn't. And the contract said that this is the whole agreement. It does. So, and he had been, let's say, middle management. So... Yes. And did he ever had a lawyer for the original, before the contract was actually signed? No, Your Honor. He was by himself? He was pro se, yes. Okay. But he wasn't unintelligent. I mean, he ran his whole agency. By no means. But he was accepting, and he was accepting of some very significant language, which Joe Drum testified to in the record below. This contract is not intended to change anything. I'm only presenting it to you because we now have new management. First American Title had acquired United General Title. And we want your allegiance. We want you to trust us, believe in us, and be honest with us. But what's supposed to change the term, though, isn't it? You said it wasn't supposed to change anything. So we're, yes, so we're giving you this contract to give you a guaranteed three-year term, meaning that if you're released involuntarily, we owe you whatever the contract says we must pay you through the term of the contract. Now that provision says, though, bonus. I mean, the word bonus is in there, which makes me wonder what the district court was thinking about when it said it, the company could pay no bonus. Because obviously, if you look at the provision itself, it has a word bonus. Yes, it does. And it says bonus to be determined. Well, that's, that's the other, yes. But there's another section of the contract that talks about post-termination. That's right. Payment of bonuses paid and to be paid through the term of the contract. It certainly, well, we can ask the other side. It certainly suggests that a bonus was to be paid in some amount, especially when the contract itself contemplates payment of a bonus after termination. Well, why can't we take your client at his own words? I'm quoting what he said in the deposition. So when it said bonus to be determined, it was up to them to decide what they wanted to do and how much they wanted to administer it. In other words, he himself said, it's up to them to determine whether to give it a bonus, and if so, how much? Yes, Your Honor, he did say that. Well, are you reneging on what he said? But he said much more in that deposition. He said, at the moment when I was given in 2006, when he was given the $75,000 bonus, which was much less than he thought he was entitled to, that's what the deposition is referring to. He said, at that moment, when I immediately spoke with Joe Drum and he said, just sit on this for a while, you're in a good place, there wasn't anything else I could do because my only option was to leave voluntarily, in which case I would be restricted from employment in the title industry for an entire year. He signed that agreement knowing that. And I don't know, how do you get around Clause 14 of the agreement that says, this agreement supersedes and replaces any prior agreements or understandings between the parties with respect to the subject matter hereof? How do you get around that? I mean, I might like to, but how do you do that? What's the logic of my presentation? We have a fully integrated contract, or what appears to be a fully integrated contract. However, there is an ambiguity within the language of the contract, particularly related to the bonus provision. You mean to be determined? Yes. How do you come to gain an understanding of what the party's intended unless you bring in parole evidence? And the parole evidence is drawn, is that, what is the extrinsic evidence that you want brought in? The original negotiations with John Dwyer, the fact that Joe Drum presented the contract with a statement that this, the only thing this is intended to change is to, is for John to have a guaranteed three-year term. The fact that his compensation during the year in which he signed the contract was consistent with his prior understanding with the United General title. The fact that during the year when his bonus was only $75,000 and significantly varied from what he understood would be his total compensation package, he immediately had a meeting with Joe Drum. And Joe Drum never said, I told you in September of this year that I'm changing the formula for all you agency managers and all you're entitled to is 2%. The fact that when John Schaefer emailed Mike Gallaher, the defendant's chief financial officer, and said, is there anything left over from the accrual which I put together, the $150,000 accrual for my bonus, is there anything left for me because he only gave me $75,000, there was no response. And the fact that when John Schaefer at the end of the year in November put together a schedule of what he thought his bonus should come to and he sent it to Joe Drum, why was Joe Drum silent and why didn't he say, John, I've told you before, you're limited to 2%. That was a matter of policy. We wanted to make it equal for all agency managers. But they didn't even give him 2% for the year in question. It may have been 2%. I thought he didn't get anything for, I must have misunderstood the facts. What he didn't, in 2007, I believe it was 2%, Your Honor, but we're also take the position that because the term ended in 2008, there should have been He was entitled to something for 2008. Yes. Mr. Schaefer, one of the positions of the defendant is that, I mean, their brief would read that the trial judge having said that this is ambiguous is not a reasonable fact finding, that there's nothing ambiguous about a contract which says bonus to be determined. It means It is ambiguous. You don't mean there's nothing ambiguous. Well, it's unambiguous that it's up to the employer to determine whether or not there'll be a bonus, and if so, the amount. What is so ambiguous about the term in an integrated contract, bonus to be determined? That means, does it not, according to the defendant, that whether you get a bonus is up to us and the amount of it is up to us. Not necessarily, because the contract doesn't tell anyone how the bonus is to be determined. It says a bonus. It doesn't say, and let's not forget that UGT wrote this contract, it's a form contract, and that contract was criticized by its own general counsel. Is that in the record? Yes. Yes. As being very detrimental to UGT. So I think we can look at this contract and Oh, this is not a contract of adhesion. We're dealing with a contract that was voluntarily signed by a man that was a high earner in employment. We're not dealing with any type of overreaching of a contract like we have with insurance contracts, are we? No, we're not. All right. But we do need to interpret and construe this bonus language, and I believe your honors can look to that opinion of general counsel saying, I no longer, we no longer want to use this contract. It's going to hurt us financially because it's so heavily weighted toward the employee's benefit. Does that speak to the question as to whether or not bonus to be determined is ambiguous or unambiguous? Their position, the employer's position, is that it speaks for itself. To be determined means we'll determine whether or not you get a bonus. If you will, your honor, in the record is the certification of my client who says, I negotiated a package of money, and that package of money included salary and bonus. And if you look at the contract, the bonus language is under one heading. It says salary. And consistent with what my client said, it has two components, minimum base salary plus a bonus. I hope that sheds some light on it. You know, what you just said about the opinion of counsel doesn't really help us because the way the company's counsel views the term of the contract, one, it wouldn't be admissible even if you write about it for all evidence. But that doesn't really help us get to whether or not, one, there is an ambiguity, and two, if there is, whether or not the evidence that you're trying to bring in is there to explain or would it have the impact to vary? Because if it's varying, then you've got a problem with the integration clause. Respectfully, the evidence that we tried to bring in was not to vary the meaning of the bonus language, but to give it meaning. What does it mean, a bonus? UGG says, I will pay you a bonus. What does that mean? Does that mean it's totally within my discretion to pay you a bonus? That's what Judge Devevois said. I know that. And, Your Honor, I think that's where the issue lies. Sure. There is significant direct evidence and parole evidence that suggests that language should have been given a different meaning. And if I may, the rule of law that was applied in this case, I believe, went like this. If you have a parole evidence contract that contains an ambiguity and you can't determine the meaning of that ambiguity from the rest of the contract, well, you can't offer any parole. And where does that leave us? That leaves anyone who's in that situation frozen. Both sides of the contract are frozen because there's no way to determine the meaning of that ambiguous language. And that's just not the law of the State of New Jersey, which controls this contract. Mr. Shelby, thank you very much. Okay. Thank you. Ms. Kelly? Good morning, Your Honors. My name is Teresa Kelly. I represent United General Title Company, First American Title Corporation, the First American Corporation, and Gary Kermot. Why isn't this case just like Emerson Radio? Why isn't this case just like Emerson Radio? There's an integration contract, there's an ambiguous term, and the plaintiff wants to introduce parole evidence not to vary the term of the contract but to explain the ambiguity, to avoid the situation that Mr. Riblock just described. I think it's different than Emerson Radio because the plaintiff actually wants to introduce evidence to change the terms of the agreement. No, to explain it. To enlarge them, to modify them, to insert a 2 percent or sometimes the plaintiff says a 3 to 5 percent bonus provision in an agreement that is not ambiguous. Mr. Schaffer ---- Well, the court found it was ambiguous, though. Excuse me? The court said it was ambiguous. I agree. I agree that the district court held that. I think if it was ambiguous ---- Can you challenge that? First of all, just tell us, do you think the district court was wrong in saying it was ambiguous? We do, Your Honor. That was error. We do because, well, in saying it's ambiguous, there are two different meanings that can be held to it, that the company had the right to decide whether to give a bonus or the amount of the bonus. I submit that the language is the bonus to be determined. It is not bonus amount to be determined. And clearly that language puts it as a complete discretionary matter as to whether the company is going to provide that bonus. If you look at the contract, Your Honors, the very next line after Section 3 that talks about salary with the language bonus to be determined, where we talk about other compensation and fringe benefits ---- Which section are you talking about? Paragraph 4. It states, in addition to any executive bonus. That really describes that any executive bonus, meaning that there may not be one. But what about Section Paragraph 7, Paragraph B, which says if the company terminates, this is the without cause, it says the employee shall be paid the minimum annual base salary in effect as of the date of termination plus the bonuses paid or to be paid for all years during the term of this agreement. Now, it doesn't say bonus if any to be paid, so certainly one can read that to say, well, obviously they contemplated some kind of bonus. It might be that the amount of the bonus is uncertain. That's why we have juries. Why, you know, when they listen to all the evidence. I mean, bonus is there, right, in the contract itself, certainly suggesting that there should be some kind of a bonus. It is there, Your Honor, in the without cause provision. And so what do we do with that? I believe that it really goes, reverts back to the section that describes salary and bonus as bonus to be determined. Mr. Schaffer was a senior vice president of East Coast Operations. He's a sophisticated businessman. He understands contracts. Mr. Schaffer was paid everything that he was due under this contract. When he left the company, he received a payment of $320,000. In this lawsuit, he says that he was entitled to more, but it's clear that the language permits the company to decide whether he gets a bonus or not. Well, that wasn't Drum's interpretation of the contract, was it? Drum was saying, look, you've got the same deal as before. We're just changing the term, i.e., the length and duration. We're not changing anything else. So Drum did not even read the contract the way you're suggesting the contract must be read. Well, Your Honor, I think you need to look at the contract. And Judge Debevoise actually did consider Joe Drum's testimony in his decision and found that it was not supportive of the plaintiff's position. Because of the integration clause? Yes. But that's Empire Radio. If the testimony from Drum is not supportive of the plaintiff's position because the judge finds, well, then you're changing the term of the contract. That's one thing, and you're right. But if the testimony from Drum would explain the provision in question, then under Empire Radio and a whole list of Jersey cases that say that Pearl Evans has to be regarded very liberally, it should come in. It seems to me the argument you're making is a very good one to make to a jury. But he's just saying, look, let me get to a jury. And maybe she's right, maybe I'm right, but I have the right to get to a jury because there's an issue of fact here. Judge, I disagree. It really is a matter of law for the court to decide. And I think it's important also to go back to Mr. Schaffer's own deposition testimony in this case. His sworn testimony repeatedly acknowledged and admitted that the company had the right to decide whether to give him a bonus. He said they could have given me a dollar if they wanted to. Well, wasn't that his testimony could not be read according to the plaintiff, that that testimony actually refers to the fact that because of the non-compete clause for voluntary termination, then in that event, you could do everything you wanted to do with respect to the bonus. But they were talking about the non-compete and voluntary termination, not to the basic right that your bonus is conditioned upon whatever we want to do. I think Mr. Schaffer was sort of combining everything and throwing the non-compete into the issue regarding the bonus. Mr. Schaffer, as I said, is a sophisticated businessman. Non-competes are very common in these contracts. He was paid a lot of money over the three years that he worked under this contract, something over $900,000. And the district court talked about how Mr. Schaffer sort of claiming in this case that he had no choice. He had to take whatever bonus they gave him because of the non-compete. But in reality, Mr. Schaffer had a lot of choices. He could have negotiated a better agreement. He signed that agreement. But we see that was the rabbit in the hat because in his own mind, he had a great agreement. The problem is the agreement that you think he had is not the agreement that he thought he had. But he signed the written agreement with the integration clause that clearly says this is it. This is our deal. But with an unclear and ambiguous language. Also, doesn't New Jersey follow an expansive view of the parole evidence rule and permits, and I'm citing from a New Jersey Supreme Court case, permitting antecedent and surrounding facts to throw light on the meaning of a contract? I agree with that, Your Honor. And I believe the district court did do that. Well, I don't know that the district court did it. If the district court had said they, you could interpret this to say the amount of the bonus isn't determined. But the district court said one possibility, and the one that district court chose, is that there could be no bonus at all. And I don't see how that jives with the language that I read you from Paragraph 7B, which talks about bonuses. If the district court did do that, then that wasn't the district court's job. That was the jury's job to do that, to take the attendance circumstances and apply them within the four corners of the contract to try to flesh out the meaning of the term. How about this case from New Jersey Superior Court? In the process of interpretation and construction of the integrated agreement, all relevant evidence pointing to meaning is admissible because experience teaches that language is so poor an instrument for communication or expression of intent that ordinarily all surrounding, I won't read you the whole thing, it's long, all surrounding circumstances and conditions must be examined. New Jersey, I don't know about Pennsylvania, but New Jersey. New Jersey's very liberal. But New Jersey's very liberal in terms of allowing evidence to come in. I understand that, Your Honor. Your friend on the other side talked about that. But they do have a very liberal construction. It is expansive, but not to change the terms of the contract that the parties agreed to. But the contract doesn't say the amount of the bonus, or the contract said no bonus. The contract just says bonus to be determined, which suggests, I mean, could they have given them a bonus of $10? Yes, it was within their complete discretion. And I guess the language I had spoke to is that any executive bonus, that further illustrates that the bonus was discretionary. Where is any executive bonus? I'm sorry. In Section 4, the first line. What Mr. Schaffer is asking the court to do is to ---- No, no, it says in addition to any executive bonus. Then he gets some other things. That doesn't say that they could not give him a bonus. Right. I guess I'm reading, Your Honor, that any meeting, there may not be one. Wow. Any or not. That's why we need raw evidence. Yeah. I mean, Mr. Schaffer is asking this court to rewrite a better contract for him. No, it's asking that he's saying let the jury decide here all the evidence, all the extrinsic circumstances. I mean, the guy who his ---- the person whose testimony they wanted to bring in, isn't he still with the company? No, Your Honor, he's not. He did give a deposition. He's no longer with the company. Did he leave voluntarily? I believe he did, Your Honor. Nothing to do with this case. Yeah, we don't believe that it's ambiguous. If it was ambiguous, it would have said bonus amount to be determined. Mr. Schaffer himself understood that and testified as such.  No, not in that section, Your Honor. Correct. The section I was referring to was the next section. Well, it just says you add it, you count it with whatever bonus you're getting. I don't think so. All right. Any additional questions? No. Thank you very much. Thank you. Mr. Schablich, just help me with one thing which is troubling me. If the contract is ambiguous, as you allege, that this bonus to be determined is ambiguous, and we reverse the matter and send it back to the district court for a trial as to whether there's a bonus to be allowed and the amount, how would you prove how much the company should give for a bonus? What would a jury be told if they think that a bonus is to be given? How much should the jury be told? How would they be told to fashion what amount of the bonus? I believe by the time this case would get to a jury, the district judge would charge the jury that the defense admits that it owes Mr. Schaefer a 2% bonus. There's nothing in this record that indicates that they think they owe anything they want to give him, not any percent. There's nothing in the record that says 2%. There's a whole area in the record that says 2%, Your Honor, if I may respectfully. You mean historically? No, no. Historically, in 2007, the year that Mr. Schaefer was terminated, I asked Gary Kermot, the chief operating officer for the parent company, can you determine Mr. Schaefer's bonus from this contract? He says, no, I can't. I asked Mr. Drum, the chief operating officer of the employee defendant, can you determine Mr. Schaefer's bonus amount from the contract? No. And I asked the head of HR, Ann Kalinsky, can you determine what Mr. Schaefer's contract should be from the contract? And she said no. You're just proving Judge Callen's point. What is your proof going to be as to the amount that the jury should award as a bonus for this year? For 2007? Yeah, the year he left. You say he's entitled to a bonus. Let's say the jury said you're going to argue he's entitled to a bonus, and then you've got to also prove the amount that they should pay. What proof are you going to offer as to that amount? Let me just conclude my comments about those three people. Each of them said deferred to Joe Drum, and his testimony was that as a matter of policy in September of 2005, I announced to all agency managers that your bonuses are going to be equal and it's going to be 2%. So going to a jury, I am going to ask the district judge to charge that the defendant has admitted that it owes Mr. Schaefer a bonus of 2%. I'm a little concerned about what's at issue here. Are we talking about the bonus for 2007? He got something for 2007. Or are we talking about 2008? We're talking about both. And the difference is, does he get 2% or does he get 3% to 5% to bring him within that $350,000 to $500,000 total compensation? So what you're asking is the addition to 2007. He got about $75,000 for 2007? In 2007, he got $143,000 roughly. And he wants more? Yes. Based upon the defendant's own admissions, based upon 2%. Where did the defendant admit that he's entitled? I can't follow you. Where did they admit that he's entitled to 2%? Joe Drum was the chief operating officer of United General Title. He is the one who drafted the contract for United General Title. He's the one who negotiated the contract for United General Title. Joe Drum says, John Schaefer's bonus was 2%, and that was a matter of company policy beginning as of September of 2005. It was intended to be a policy uniformly applied to all agency managers. That's the person who drafted and signed the contract. How about for 2008? That's a legal issue. Well, no, it's a fact issue. You have to prove as to what he's entitled to for a bonus for 2008. What are your proofs going to be that the jury should use to determine how much to award him for 2008? That's a good question. Well, that's why I asked it. And the best answer I have is that we go back historically and look at what he was paid historically. That doesn't apply because you yourself admit that to be determined means that they're determined the amount of the bonus, not looking historically. Historically, between 3% and 5%. Is the 2008 bonus to be 3%, 4%, or 5%? How well did the company do in 2008? These are all parole issues that really go to this issue. Well, it's not looking at tea leaves. There's nothing there that says as to the amount that they should award him, certainly for 2008. And I would say for 2007. That's the ambiguity. That's the ambiguity. Nobody knows. Well, but you still have to have some quantifiable proof. If it's illusory, then it's not a contract. There are two people that think they know what this agreement is. One is Joe Drum, who represents the United General Title, chief operating officer, who's the guy who told the chief financial officer how to compute the bonus for 2007. And the other is John Schaefer. But they have different versions. And that has to be resolved. Why are you telling me that the contract is illusory, that an illusory contract are not contracts? Therefore, he's not entitled to a bonus. If no one can determine what the bonus is, he's not entitled to a bonus. It's a matter of law. But if you look at parole, you can determine what the bonus is. A jury will hear these conflicting versions. They're going to hear that the defense has admitted 2%. That is a given. And they're going to hear a conflicting version, which Mr. Schaefer will give, and they're going to make a decision. Who's right? Who's wrong? And critical issues are, why didn't Joe Drum, when John Schaefer started complaining about a 2% bonus, why didn't Joe Drum say, hey, John, get off my back, the deal is 2% and you know it? What do you have to say about the general proposition that when you're talking about bonuses, you're talking about something in addition to what you're entitled to, something as a matter of grace? In this particular case, my argument would be that there is one category called compensation. It's in the contract, it's under salary, and it has two separate components. But yet that is what was negotiated, the total compensation. There was no suggestion ever to John Schaefer that the second portion of his compensation component bonus was to be determined on a whim. You're saying there was a deal for a bundle, and the bundle had two components, and if you're not going to give him a bonus, fine, but then you increase the other part of that compensation to make up for the absence of a bonus, or if you reduce the bonus, you increase the other part of the compensation so that the total bundle remains basically the same. To be consistent with the contract, yes. Yeah, but there's no evidence to support Judge McKee's theory, as good as it is. We have John Schaefer's recollection of the agreement. He doesn't say it's a bundle. Well, what he says, he negotiated a package to arrive at a range of numbers for total compensation. And then Judge Towne would say, well, how do you determine within the range where this goes? But we understand your argument. Let me see counsel for a second. If we can take him out under advisement.